UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ADVANCED CARTRIDGE
TECHNOLOGIES, LLC,

     Plaintiff,

v.                               CASE NO.: 8:10-cv-486-T-23TGW

LEXMARK INTERNATIONAL, INC.,

     Defendant.

_____/

## ORDER

     Advanced Cartridge Technologies, LLC, ("ACT") sues Lexmark International, Inc., for patent infringement, and as a *qui tam* relator ACT sues Lexmark for false patent marking.  The Leahy-Smith America Invents Act, which repeals the False Marking Statute's *qui tam* privilege and limits recovery for false marking to a plaintiff suffering a "competitive injury," eliminates ACT's *qui tam* action and leaves in doubt ACT's standing to pursue a false marking claim.

                          \*     \*     \*

     Lexmark manufactures computer printers and printer toner cartridges.  To control the lucrative toner cartridge after-market, Lexmark designs printers that operate only with a toner cartridge equipped with a compatible computer chip.  *See generally Lexmark Intern., Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 530 (6th Cir. 2004); *Static Control Components, Inc. v. Lexmark Intern., Inc.*, 615 F.Supp.2d 575,

577 (E.D. Ky. 2009); *Arizona Cartridge Remanufacturers Ass'n v. Lexmark Intern., Inc.*,
290 F.Supp.2d 1034, 1037, 1039 (N.D. Cal. 2003).  The protective computer chip
ensures that a toner cartridge ceases to function after a single use.
"Re-manufacturers" of toner cartridges circumvent Lexmark protective chips by
means of a "replacement chip" that, if placed over a Lexmark chip, "fools" a
Lexmark printer into operating with the unauthorized toner cartridge.

 ACT is one of many companies created by Steven Miller, who invents and
patents toner cartridge technology, including replacement chips.  In early 2010, ACT
gained title to three patents that claim a replacement chip-blocking structure and a
toner cartridge thumb-handle.  (Doc. 76, Exs. A-C)  Six weeks later, ACT sued
Lexmark.  The amended complaint (Doc. 34) alleges that Lexmark infringed the
three patents and that Lexmark labeled toner cartridges with expired, invalid, or
inapplicable patent numbers.  Because of the alleged false patent labeling, ACT
asserts a claim under the False Marking Statute, 35 U.S.C. § 292(a), which requires a
fine of "not more than $500" for each article a defendant falsely marks as patented
"for the purpose of deceiving the public."

 Since enactment of the "Act of August 29, 1842," 5 Stat. 544, § 5, the fine was
levied only once on each scheme to falsely mark, rather than once on each item
falsely marked.  "Doubtless the statute has appealed to some informers as an open
road to great and sudden wealth," states a late nineteenth century commentator, but
"the strictness of construction adopted by the courts . . . dissuade[s] a person from

undertaking the expense and trouble of litigation merely for the sake of plunder."
Odin B. Roberts, *Actions Qui Tam Under the Patent Statutes of the United States*, 10 Harv.
L. Rev. 265, 272-73 (1896).  Therefore, the commentator concludes, "[i]t is more
than likely . . . that actions *qui tam* under the patent statutes will continue to be a
rarity in the Federal courts."  Roberts, *supra*, 10 Harv. L. Rev. at 273; *see also* Berkeley
Technology Law Journal Annual Review 2011, *Patent Law: Additional Developments*,
26 Berkeley Tech. L.J. 367, 368 (2011) (describing the False Marking Statute as
"largely dormant" until 2010).  That rarity of claims vanished suddenly in late 2009
(less than three months before ACT sued) when *Forest Group, Inc. v. Bon Tool Co.*, 590
F.3d 1295, 1301-04 (Fed. Cir. 2009), held that the False Marking Statute requires a
distinct fine for each falsely marked item.

      After *Forest Group* and in response to a rapid increase in speculative and large
awards in *qui tam* actions for false marking, Congress passed the Leahy-Smith
America Invents Act, H.R. 1249, 112th Cong. (1st Sess. 2011), which retroactively
eliminates the False Marking Statute's *qui tam* provision.  Instead, the new 35 U.S.C.
§ 292(b) permits "[a] person who has suffered competitive injury as a result of a [false
marking] violation" to sue "for recovery of damages adequate to compensate for the
injury."  The same day the President signed into law the America Invents Act,
Lexmark moved to dismiss (Doc. 252) ACT's claim for false marking on the ground
that ACT is a shell corporation that suffered no Section 292(b) competitive injury
from Lexmark.

Lexmark ultimately succeeds, although without offering a tidy analysis. To explain the disorder requires first a word on the meanings of "standing." Constitutional (Article III) standing, prudential standing, and statutory standing are distinct concepts that arise from distinct sources. Article III imposes constitutional standing, an "irreducible [] minimum" requirement to sue in federal court, consisting of an injury-in-fact that is fairly traceable to an act of the defendant and that is likely redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The judiciary imposes prudential standing, a limit to federal jurisdiction that preserves the "properly limited [] role of the courts in a democratic society." *Bennet v. Spear*, 520 U.S. 154, 162 (1997). Congress can eliminate prudential standing (although prudential standing "applies [to a statute] unless it is expressly negated," 520 U.S. at 163), and, conversely, Congress can impose a requirement of statutory standing, a stricter standing requirement that is analogous to, and not neatly distinguishable from, the injury element of a legal claim. *Roberts v. Hamer*, 655 F.3d 578, 580-81 (6th Cir. 2011); *Alliance for Environmental Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85-87 (2d Cir. 2006); *Abecassis v. Wyatt*, 704 F.Supp.2d 623, 645 (S.D. Tex. 2010); *see also* William A. Fletcher, *The Structure of Standing*, 98 Yale L.J. 221 (1988).

Lexmark argues that ACT lacks a (statutory) competitive injury but supports the argument with legal authority pertaining to the (constitutional) Article III standing requirement. The result is a jumble. In confusion Lexmark seeks dismissal

for lack of subject matter jurisdiction under the Constitution even though Lexmark's argument is effectively that ACT fails to state a claim under the amended False Marking Statute.  Further, the competitive injury that Section 292(b) requires differs from the injury-in-fact that Article III requires.  *Black's Law Dictionary* 302 (8th ed. 2004) defines a "competitive injury" as "[a] wrongful economic loss at the hands of a commercial rival . . . ."  Formulated differently, a competitive injury is a business loss caused by a competitive means, including false patent marking, that the law forbids. *Cf. Ely-Norris Safe Co. v. Mosler Safe Co.*, 7 F.2d 603, 604 (2d Cir. 1925) (L. Hand, J.), *rev'd on other grounds*, 273 U.S. 132 (1927).  In contrast, the minimum injury-in-fact necessary for standing under Article III is a mere "identifiable trifle."  *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1351 (11th Cir. 2009).

Lexmark's misunderstanding aside, the false marking claim suffers dismissal for straightforward reasons.  First, ACT fails to allege an injury-in-fact and therefore fails to meet the "irreducible minimum" of Article III standing.  Second, even assuming ACT suffered an injury, the injury is too remote for ACT to maintain prudential standing.  (Because ACT lacks Article III standing, this order need not address the obvious corollary of ACT's suffering no injury-in-fact, i.e., that ACT lacks a competitive injury and therefore lacks statutory standing under the amended False Marking Statute.)

Although Lexmark addresses competitive injury, Lexmark's underlying point is that ACT suffered no injury, competitive or otherwise.  A plaintiff's initial

obligation is to plead facts that confer Article III standing, beginning with an injury in fact that is "concrete and particularized." *Lujan*, 504 U.S. at 560-61; *Dermer v. Miami-Dade County*, 599 F.3d 1217, 1220 (11th Cir. 2010); *El Paso Natural Gas Co. v. F.E.R.C.*, 50 F.3d 23, 28 (D.C. Cir. 1995). ACT promises to "identify numerous re[-]manufacturers who [] declined to buy third party cartridges, including [ACT's] licensed cartridges , . . as a result of [Lexmark's false] marking" (Doc. 257 at 6), but no re-manufacturer is identified. ACT sued Lexmark promptly after *qui tam* liability expanded, ACT formed and acquired the three patents immediately before this action, and ACT provides not a single fact to suggest that ACT operated as more than an *ad hoc* corporate vehicle for prosecuting this action. Slight or severe; past, present, or future; no injury is to be found.[*]

Alternatively, prudential standing is absent because ACT is not a suitable plaintiff to sue Lexmark for false marking. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804 (1985); *Joint Stock Soc'y v. UDV N. Am., Inc.*, 266 F.3d 164 (3d Cir. 2001) (Alito, J.) (affirming a dismissal for lack of Article III standing and, in the alternative,

---

[*] ACT complains about a lack of discovery directed at competitive injury. The protest might persuade if Lexmark was allowed (as it asks) to factually attack ACT's standing. Because Lexmark's argument that ACT lacks a competitive injury addresses the false marking claim's merits as much as ACT's standing, a ruling on a factual attack would require summary judgment and its attendant procedure. *See Odyssey Marine Exploration, Inc. v. Unidentified Shipwrecked Vessel*, 657 F.3d 1159, 1169-70 (11th Cir. 2011); *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003). However, ACT's failure to allege and identify an injury-in-fact obviates the need to conduct discovery about an injury-in-fact. *See Lujan*, 504 U.S. at 561; *Cornerstone Christian Schools v. Univ. Interscholastic League*, 563 F.3d 127, 134 (5th Cir. 2009) ("on a motion to dismiss, [a] plaintiff[] must allege facts that give rise to a plausible claim of [] standing"); *see also Bochese v. Ponce Inlet*, 405 F.3d 964, 974-75 (11th Cir. 2005). Discovery would wastefully confirm what is already palpable from ACT's silence – that ACT is a shell which competed with neither Lexmark nor anyone else.

prudential standing).  Nothing in the America Invents Act "expressly negates" the

prudential standing requirement, which therefore applies in some form.  *Bennet*, 520

U.S. at 163; *Phoenix of Broward, Inc. v. McDonald's Corp.*, 489 F.3d 1156, 1162-63 (11th

Cir. 2007).  A false patent marking both misrepresents a product's attributes and

abuses a patent monopoly; the former redolent of a false advertisement, the latter of

an antitrust abuse.  Although prudential standing limits are not uniform across

statutes, the harm caused by false marking is sufficiently similar to the harm caused

by unfair competition (i.e., false advertising) and anti-competitive behavior (i.e., an

antitrust violation) that the prudential standing rule for those two business torts

provides a ready and proper limit for the False Marking Statute.  For unfair

competition and anti-competitive behavior, prudential standing serves mainly to deny

a plaintiff standing to sue for a speculative or remote harm.  *Natural Answers, Inc. v.

SmithKline Beecham Corp.*, 529 F.3d 1325, 1330-32 (11th Cir. 2008) (false advertising);

*Associated General Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S.

519, 532-45 (1983) (antitrust); *Florida Seed Co., Inc. v. Monsanto Co.*, 105 F.3d 1372,

1374 (11th Cir. 1997) (same).  A claim for false marking invites the same prudential

limitation.

       An absence of competitive injury strongly disfavors a plaintiff's claim to enjoy

prudential standing to sue for unfair competition or anti-competitive behavior.

However, the prudential standing inquiry is broader than whether a plaintiff suffered

a statutory competitive injury.  A falsely marked product, like a falsely advertised

product, can harm a broad class of competitors, distributors, retailers, customers, and so on.  In consequence, a victim of a competitive injury can for prudential reasons lack standing to sue.  *Phoenix*, 489 F.3d at 1167.  Although this separates prudential standing to sue for false marking from statutory standing, nevertheless, a plaintiff's failure to compete directly with the defendant remains a strong reason to deny prudential standing.  *See*, *e.g.*, *Natural Answers*, 529 F.3d at 1331; *Stanfield v. Osborne Industries, Inc.*, 52 F.3d 867, 873 (10th Cir. 1995).  ACT sells no product and competes not at all with Lexmark.

   But the trouble for ACT is as much a lack of direct harm as a lack of direct competition.  The issue is analogous (although not identical) to proximate cause.  *Bond v. United States*, 131 S.Ct. 2355, 2362 (2011) ("if [] the person alleging injury is remote from the zone of interests a statute protects, whether there is a legal injury at all and whether the particular litigant is one who may assert it can involve similar inquiries"); *Williams v. Mohawk Industries, Inc.*, 465 F.3d 1277, 1287 & n.4 (11th Cir. 2006) (RICO); *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 760 (1977) (Brennan, J., dissenting) (antitrust).  "[W]e cannot trace the effect of an act to the end, if end there is," *Palsgraf v. Long Is. R.R. Co.*, 248 N.Y. 339, 352 (1928) (Andrews, J., dissenting), and so, to the contrary, "[t]he general tendency of the law, in regard to damages at least, is not to go beyond the first step." *Southern Pac. Co. v. Darnelltaenzer Co.*, 245 U.S. 531, 533 (1918) (Holmes, J.).  In ACT's one theory of competitive injury, Lexmark's patent labeling intimidates cartridge re-manufacturers into refusing to

transact with a company that licenses patents from ACT.  *Cf.* Douglas Laycock, *Modern American Remedies* 105-07 (4th ed. 2010) ("Many cases fit this pattern – *A* injures *B*, who is then unable to perform obligations to *C*, but *C* does not thereby get a claim against *A*").  If everyone touched by the same outward rippling of harm could recover, fashioning a legal remedy would entail both identifying a distinct statutory component of harm commingled with other causes of business loss and apportioning damages among primary, secondary, and tertiary victims, while avoiding duplicative damages – a daunting if not insuperable task.  *See Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268-69 (1992); *Associated General Contractors*, 459 U.S. at 532-45; *Verizon Comm. Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 416-18 (2004) (Stevens, J., concurring).

In the words of Judge Posner (writing on antitrust):

> [A] patentee who licenses the manufacture of the patented product and whose royalties are keyed to his licensee's sales or profits cannot obtain damages caused by an anti-competitive scheme that is directed at the licensee, injures the licensee's business, and by so doing reduces the licensor's royalties. []

> This is the application of the age-old tort principle of remoteness of damages to the novel statutory tort created by the federal antitrust laws. The tort principle serves the practical goals of preventing duplicative recovery of damages and proliferation of lawsuits . . . . [For] if the licensor were allowed to sue, why not everyone else whose fortunes are linked to the victimized licensee – or, if not everyone, at least the licensee's employees, his (other) suppliers, and the merchants who sell to his employees?  None of these is more remote from the antitrust violation than the licensor.

*Grip-Pak, Inc. v. Illinois Tool Works, Inc.*, 694 F.2d 466, 473-74 (7th Cir. 1982) (citation omitted), *disapproved on other grounds*, *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993). (Perhaps the remoteness would close if Lexmark placed ACT's patent numbers on a product, but that is not alleged. *See* (Doc. 34, Ex. 7))

Hence, even if ACT could prove lost licensing money because of false marking by Lexmark, the harm is still too derivative or indirect to support prudential standing. A re-manufacturer attempting to design and sell a toner cartridge that competes directly with a falsely marked Lexmark toner cartridge is perhaps a proper plaintiff. Even then, a direct competitor often struggles to prove a competitive injury with the requisite, reasonable certainty. *Palmyra Park Hosp. v. Phoebe Putney Mem. Hosp.*, 604 F.3d 1291, 1299-1300 (11th Cir. 2010) (antitrust); *SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 868 (2d Cir. 1968) (Friendly, J., concurring) (securities fraud); *California Apparel Creators v. Wieder of Cal.*, 162 F.2d 893, 902 (2d Cir. 1947) (L. Hand, J., dissenting) (false advertising); *Restatement (Third) of Unfair Competition* § 36 cmt. b (1995). Yet the alternative, injunctive relief, is unavailable under the amended False Marking Statute. The abstruse computation and proof necessary to specify a precise value of a competitive injury provides an additional reason that standing to sue for false marking is foreclosed to a plaintiff that is two or more steps removed from direct competition with the defendant.

Miller wants to shuffle the plaintiffs and try again on the false marking claim with a different company, Platinum Manufacturing International, Inc.  Perhaps Miller's luck will improve with Platinum, but not here.  This action is almost two years old, both extensively litigated and already delayed.  Joining Platinum means starting afresh.  The best place for that, if anywhere, is a new lawsuit.

Lexmark's motion (Doc. 252) is **GRANTED**.  Count II of the amended complaint (Doc. 34) is **DISMISSED** for lack of Article III standing.  The court adjudges that ACT lacks standing to assert the claim for relief putatively alleged in Count II and fails to state a claim for relief in Count II, in each instance because ACT incurred no judicially cognizable injury.

ORDERED in Tampa, Florida, on December 21, 2011.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE